17-2301 Carusel Investments, L.P. v. Novatel Wireless, Inc. May it please the Court, Robert Harkins for Carusel Investments. Carusel is a family-owned business and Charles and Vera Gravilevich, the owners of that company, are here with me today. Their father, who is now deceased, is the named inventor on all four patents. This is a very unusual case because— Are any of these patents still live? They may be live, but if they are, they're nearing the end of their life expectancy. They're right at the end at this point. The thing that makes this case unusual is that the accused products, which are called MiFi devices, are actually a preferred embodiment in the patent. And so the only way you can find non-infringement and uphold non-infringement is to read out that preferred embodiment. The patents say that an embodiment is to put a moving base station in, quote, an automotive vehicle traveling on the roadway, and that's at Appendix 193, Column 4, Lines 8 to 9. The claims are all consistent with that embodiment. There's never been any factual dispute in this case at any point, and it's admitted thoroughly throughout the opposition brief in this case that MiFi devices are put in cars, traveling on the roadway, in traffic. They have to work in traffic. They're tested for all conditions of traffic, from zero miles per hour up to 80 miles per hour. They were tested in 10 metropolitan areas, thousands and thousands of miles. Nevertheless, there was a judgment of non-infringement, and that judgment was based on elements that were added. You will not find them in any claim asserted in this case. Even worse, the basis for this judgment was something that the district court entered, really, for the first time after the trial was over, and it was a version of the claim construction that was never provided and contradicts the patent, and it was provided for the first time in the denial of the JMAL. That reconstruction said that the claims in this case had to have more than to be put in a car on a roadway to travel at the speed of traffic. Well, claim construction is not before us, is it? I'm sorry? Claim construction is not before us. It was waived. It wasn't dealt with. There's no Rule 50 motion. Yes. So, Your Honor, two things. One is the claim construction that we're talking about is before us. First, it was ñ and the Rule 50 motion is really a separate item, because if there was injustice done in this case or there was an error in claim construction that was done to justify the jury verdict in this case, there are two bases. It either can result in a new trial under Rule 59 or 60, and it's still a claim construction issue, or under the Ninth Circuit authority, there is ñ and it is true. A 50A motion was not made on this ground at the close of evidence. But the Ninth Circuit authority that we have cited indicates that there is an exception in the event that there is a missing 50A motion that the Ninth Circuit holds, and this is the United States v. 33 1⁄2 Acres case and the EEOC v. GoDaddy case, also the Padgett case that we cited, that in that event, a 50B motion is still valid, still appropriate, but you have to use a different standard. The exception standard is that you have to show plain error and manifest injustice, basically that there's no evidence that could ñ instead of substantial evidence, you really have to show there was nothing that the jury could have relied upon to reach its verdict. So even since this is a claim construction issue and it's about an added element that was ñ that has nothing to do with the claims in this case, it's still appropriate because if we're right about the claim construction issue and there was no evidence in the trial of the appropriate claim construction, then we are still entitled to a 50B JAMAL in our favor of infringement. So what happened here is that the Court had twofold indicated that first it added a requirement based on subject matter disclaimer, and that subject matter disclaimer ñ I'd like to return to Judge Lurie's point, which is didn't you waive the ability to object to the claim construction? Okay, so there's two items regarding that claim construction. The first is, in the first instance, did we waive the ability to object to the subject matter disclaimer finding that added the phrase, that's not in any of the claims, that the accused device must travel with traffic at a rate of speed that is comparable to the speed of the traffic. That's not in any of the claims. The judge held that that was added. And, in fact, there was no waiver of that point. What happened in that case was the plaintiff had said that that was just an embodiment and not actually a subject matter disclaimer. And the Court, in its finding on that point, at oral argument, there was no further argument. It was just submitted on the tentative. Then, in the final, after that pointÖ You say there's no further argument. Right. Did she give you a chance to have further argument on that point? Right. At the oral argument, we could have further argued the tentative, and instead the position was we just submitted on the tentative, which is, in California practice, is just saying we submit. We don't have anything else to say about this. We just submit on the brief. So the Court says, I'm tentatively giving you my ruling on claim construction, and you all say we accept that, we'll submit on the tentative. Okay, so there is a difference. There was no statement that we accept the Court's ruling. We just said we submit on the tentative. Your Honor, for plaintiff, we'll go ahead and submit on the tentative. Correct. And the Court said, all right. Then he turned to your opposing counsel, and your opposing counsel said, actually, Your Honor, I have a problem with one of your terms, and then went through the next several pages of the hearing transcript and argued the claim construction point with the judge. But you all remained silent. So the judge was clearly giving you an opportunity at that moment to raise any disputes you had with his tentative construction. The other side availed themselves of that opportunity. But you all remained silent and told him, no, we'll submit on the tentative. The position at that time was that we had no further argument to make, that we were just submitting on the tentative. That's correct. What happened after that is that the Court did, I would just say, contextually, when you look at what happened, the Court did not believe that we said we agreed with the Court's ruling, because after that oral argument, the Court issued its final claim construction order. And at Appendix 15, the Court says the Court rejects plaintiff's contention that this portion of the specification is merely describing a preferred embodiment. That is, the Court didn't say, well, based on what you said at oral argument, that the plaintiff agrees with the tentative. The Court actually ruled substantively that it disagreed with the position that we had staked out in the case. We said in our papers, this is just an embodiment. It's not subject matter disclaimer. The Court said, do you have anything to say about this? We said we submit on the tentative, which we've cited in California practice as a neutral statement. We're just not going to say any more on that point. And then the Court actually ruled on the point, saying it disagreed with our position. And it was going to – it supplied the claim construction over our objection. And it's in footnote 5 at Appendix 15 where it's doing that. So once you have – and the law that we've cited in our reply brief of Yamada v. NovoBioCare, 825F3, 536 at 543, says when a party takes a position and the district court rules on it, there's no waiver. So we got a substantive ruling that rejected our position in our briefing. So we don't think there was a waiver. But that's just the first part, because even if you take – even if you agreed with that subject matter disclaimer, and we believe it was incorrect because there are other settings that don't limit us to that, that still doesn't – we still would have won the trial if that – if what had happened was that that phrase was interpreted to just mean what it said, that the device was designed to move with traffic at a rate of speed that is comparable to the traffic. That was proved at trial. There was no conflicting evidence. It's cited all over the place in the brief that that actually happened. But you did have evidence as to what was meant by moving with the traffic. You're saying that there was something improper? Correct. What we're saying is that the – what happened is that in the summary judgment proceedings, the defendants moved for summary judgment saying, well, your product doesn't do anything more than just you put it in the car, and it does work. It works. That's all that MIFIs do. It's exactly the intermediary device of the patent. It takes the signals from the base station, and it is the thing that transmits those signals to the individual mobile units and back. That's what the patent claims are about, and that's exactly what a – that's all a MIFI does. And we said if you put that in a car, of course the car moves in traffic at the rate of speed of the traffic. And they said, no, it has to do more, like track it or something like that. In ruling – in opposing that motion and rejecting that summary judgment motion, the district court correctly held that if you were going to use that phrase, it did not require more than putting it in a car. And I want to direct your attention to Appendix 396. This is the – there's one page in the appendix I'd like Your Honors to look at for this appeal. That's the one. In that order on summary judgment, the district court said defendants argue that merely showing that the accused products were designed to operate while traveling in a moving car is insufficient to satisfy the adapted-to, configured-to claim limitation. But plaintiff correctly notes that the specification of the 904 patent expressly describes an embodiment of the invention where the moving base station is moved by an automotive vehicle traveling on a roadway. Then the district court at 396 cites the Federal Circuit Authority saying as a claim construction matter, it would be inappropriate to require more than putting it in a car on the roadway because that would read out a preferred embodiment. That was a claim construction position that the court ruled in the plaintiff's favor. Then at trial, when the evidence was all said and done, there was no evidence – there was no evidence that contradicted that. It all agreed, and it's in the defendant's brief, that, in fact, MIFIs are in cars, in traffic, they move with traffic. What happened after that was in the JMAL, the district court changed its construction for the first time. We had never heard this before and said, no, now I'm going to find that maybe – that actually you have to know how fast things are going. You have to have a knowledge of speed. That is exactly what reads out the embodiment because the embodiments in the patent – there are two embodiments in the patent. One says if you put this in a car, the car is going to move with traffic automatically. That's an embodiment. That's the MIFI embodiment. A second embodiment is if you put it on a train going along the side of the road, you set that train at 60 miles an hour. You have no idea how fast traffic is moving, but the patent says that's good enough because that will naturally capture enough traffic that's going to be moving at highway speeds without knowing how fast anything is moving. So the only way to get this knowledge of speed that you have to track traffic or know how fast traffic is going or know how fast the MIFI is going reads out at least two embodiments. It cannot be a correct result. And the district court recognized that before the trial, but then when that was the only evidence left after the trial, the district court changed its claim construction erroneously and we asked for a reversal on that. Given the correct claim construction, the evidence only is uniform that we proved infringement and so we asked for a J-mall of infringement. I'll reserve the balance of my time. Thank you. Okay. Mr. Thakkar. Good morning, Jonas. What CARESO is asking for is an extraordinary remedy today. They're asking you to reverse a jury finding of infringement. What they're arguing based on the reversal is that it's because the district court got the claim construction wrong. They're not just asking us to reverse the jury finding of infringement. They're also asking us to reverse two district court findings of waiver, which I think precede even getting to the jury finding. So we have to find the district court was wrong on waiver on claim construction when they expressly found they waived this argument by not offering anything on tentative. We have to also find, I think, if I'm not mistaken, that the district court was wrong in finding they waived the 50B motion because they had not brought a 50A motion. And then if we decide the district court wrongly decided both issues of waiver, then we get to the merits and unravel the jury finding. Correct. Is that right? That is exactly correct. And the waiver argument is not as simple as they present it, as if there was a claim construction hearing and here we are today. That's not what happened. The court listened to the claim construction, received claim construction briefs, and provided a tentative two days before, giving everyone plenty of opportunity to be prepared for the claim construction. And then after it heard oral argument from both sides, it provided a final, which was the same as the tentative. But that's not where it ended, the seven more months of trial. And over the course of the seven months, there was a motion for non-infringement that we filed as the defendants. And at that point, this issue became crystal clear. We knew what the court's claim construction was. They knew what evidence we were going to present. We were going to present that these devices are just like your cell phone. They're tested to move in different varying speeds, but they don't move at a rate of speed comparable to the speed of traffic, which is essential to what the invention is about. Because the invention is not about mobile Wi-Fi devices like your cell phone. It's about mobile base stations that move in traffic at a rate of speed of traffic to reduce handoffs. I'm just curious. Are these standalone devices? I wish I brought one. I have a minivan, and the minivan actually has a Wi-Fi hotspot. Is that what you're talking about? That's exactly what we're talking about. And your cell phone. So your cell phone, you can use your cell phone as a hotspot, or your iPad to your iPhone. The new cars actually come with these Wi-Fi installed devices, or you can buy a dedicated one, which is what was basically $60, $50. And then the advantage of that is your phone is available for use while you still use this device. And frankly, these devices are meant for use in conference rooms. So the standalone one, it also wouldn't drain your phone's battery the same way if other people were using your hotspot. Correct. So it's a little more secure, a little cheaper, and it's separate. And you use those devices as a hotspot. They're not mobile base stations that move in traffic at a rate of speed comparable to the speed of traffic to help facilitate multiple phones using those as base stations. And so what I want to do is return to what happened, which is at the motion to summary judgment, it was absolutely clear what the claim construction was and what evidence we were going to present and what they were going to present. And what they argued to the court was this is an issue of fact that should go to the jury. And their voices obviously argued that. That this is an issue of fact. This is not an issue of claim construction. This is not an issue of law. It's an issue of fact. They also filed a motion in limine where they said defendants should not be able to present evidence contrary to the proposed construction. And the district court said to them, I hear your motion. If you have any complaint about any evidence that is entered that is contrary to the claim construction, please object contemporaneously in court. So they asked for an issue of fact and they got a specific instruction from the district court saying please object if you have any problems. Did they object to my evidence in opening argument? Did they object to my technical expert testifying that these devices don't move at a rate of speed comparable to the speed of traffic? Did they object to my closing argument? Did they object after the close of evidence with a Rule 50A motion? Not a single objection was ever heard because they believed they were going to persuade the jury that simply moving in traffic like your cell phones was really the same as mobile base stations that move in traffic at a rate of speed comparable to the speed of traffic for the purpose of reducing handoffs. The jury made a conclusion. They heard the evidence for five days. They went back and they deliberated and they said no infringement. And now what they're asking this court to do is turn into a matter of law that they themselves argued was a matter of fact. And that is an extraordinary remedy. So as this court correctly notes, first you have to find that the district court abused indiscretion in finding a waiver. And if you get past that, you have to find that there is a waiver under Rule 50B is sufficient because there is manifest injustice even though the district court has said in its order in J-Mall that there was substantial evidence to support the verdict. And then finally you get to the merits. And again, I submit on the briefing that if you read even the merits, what they're characterizing is the preferred embodiment as just putting a Wi-Fi device, Wi-Fi hotspot and driving it down the street is what the preferred embodiment was. That was not the preferred embodiment. The preferred embodiment was a carousel of track train stations that carry these basically mobile base stations that you see that are fixed and carrying them around the freeway at a rate of speed comparable to the speed of traffic. And what the patent says, well, instead of using train tracks as a conveying device, you could use a car. That has nothing to do with mobile Wi-Fi hotspots. And so if you have any questions beyond the briefing, I'm happy to answer them. But actually, that's all I have to say today. We'll see. Any questions? Any questions? OK. Thank you. Mr. Harkins. Thank you, Your Honors. Well, I think you can see some of what happened in front of the jury when Mr. Thakor just got up again and said that the preferred embodiment is not a device, that is a mobile device that serves to send signals between a base station and mobile units, but is instead a train station circular device that has to go around and around a track, which is one embodiment that was claimed in patents that are not in this case. And attempting to limit the claims in this case to a train that goes around in circles when, in fact, there is another embodiment in the patent that is claimed to put the device on a car is exactly why the jury got misled into finding something that was incorrect. And the problem was it was based on an incorrect claim construction that said you had to do more than put it in a car. On Appendix 396, the district court recognized saying you have to do more than put this device in a car would read out a preferred embodiment and would be a claim construction error. The district court said that before trial. But when trial was over, in order to justify the jury result, there was no other way to justify it, the district court changed that construction for the first time and said now I say it does require more than simply putting it in a car. You have to know how fast things are moving. But that's exactly what the district court had previously recognized would read out the preferred embodiment. The evidence that was submitted at trial, I mean, Mr. Thakur is right that this was all laid out before the trial. That we said, yes, of course, these MiFi devices don't know speed. And if that's true, grant the summary judgment. Because we don't have that evidence, but we definitely have evidence that these are put in cars and tested in all traffic conditions to work with traffic the way that it's said that you have the base station, it submits the signals as a hotspot. That's what the embodiment was. The court held that we were correct before the trial, but when there was no supporting evidence after the trial, it changed that construction. That's inappropriate. We had no opportunity to challenge that construction until the first time it ever came out, which was after the trial. So when we talk about the claim construction that there was a discussion was their waiver, one thing that you have to understand is that was just whether or not we had to move with traffic at all. That moving with traffic was put in during the claim construction order. Even if you grant that that was, let's say you grant that that was waived. We don't think it was. But if you do, we met that requirement. We showed that this was put in traffic using the same embodiment from the patent at all speeds of traffic. It works in traffic. Only after the trial did we get this new claim construction about knowledge of speed, which is a wrong claim construction and, as the district court itself noted, reads out the preferred embodiment. Now, in his closing, Mr. Thakor noted at Appendix 1642, I'm not going to say we don't infringe their patents. He told the jury that. And if you apply the correct claim construction in this case, I think that's a correct statement. We would agree with it because they do infringe the patents, and there's no evidence to the contrary. Thank you. Thank you. Thank you both. Case is taken under submission. You don't have a cross appeal. I was just going to simply say, Your Honor, that statement is taken out of context, but I will submit on the papers. I think we've heard the argument. Thank you. Case is taken under submission. All rise.